UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Daniel McNeil, Jr., | ) | C/A No.  4:07-3880-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Inv. Danny Watson, | ) | |
| Inv. Sgt. NFN August; | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff filed this action under 42 U.S.C. § 1983[1] on December 3, 2007. On August 15, 2008, defendants filed a motion for summary judgment along with supporting memorandum. (Doc. #30). Because plaintiff is proceeding pro se, he was advised on or about August 18, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. Plaintiff filed a response in opposition on October 20, 2008.

## II.  DISCUSSION OF ALLEGATIONS

In his complaint, plaintiff alleges that the evidence/testimony relied upon by defendants to support his arrest on January 2, 2007, for burglary and assault and battery with intent to kill was false and that defendants did not conduct a complete investigation before arresting him. As a result, plaintiff claims that

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

he was wrongfully (or falsely) arrested and imprisoned. Plaintiff requests "2.5 Million damages for illegally

confine. . ." (Complaint p. 5).

### III.  SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully

develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404

U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues

of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction

does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a

federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court

assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the

motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on

the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must

respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing

party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v.

Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties

have had ample opportunity to explore the merits of their cases and examination of the case makes it clear

that one party has failed to establish the existence of an essential element in the case, on which that party

will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete

failure of proof concerning an essential element of the non-moving party's case, all other facts become

immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that

defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to

2

make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.

<u>Celotex</u>, 477 U.S. at 322-323.

## IV. ANALYSIS

First, defendants argue in their memorandum that because the plaintiff had already filed a lawsuit regarding the alleged misconduct, this lawsuit should be dismissed in its entirety.

It is noted that plaintiff previously filed an action against defendant August, the arresting officer, and it was recommended by the undersigned that the action be dismissed. This recommendation was adopted by the District Judge on December 12, 2008. As the claims are the same against defendant August in this action as in action 4:07-542-TLW-TER, it is recommended that defendant August be dismissed based on the same reasoning. The above-captioned case is subject to summary dismissal for the same reasons the complaint filed in Civil Action No. 4:07-542-TLW-TER was subject to summary dismissal. *See* <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, <u>supra</u>, where the United States Court of Appeals for the Fifth Circuit commented:

> The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient.

<u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, <u>supra</u>, 425 F.2d at 1296. This court may take judicial notice of Civil Action No. 4:07-542-TLW-TER. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970). *See also* <u>Colonial Penn Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239, 1989 U.S.App. LEXIS® 16328 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"). Additionally, the claims against defendant August are barred pursuant to *res judicata*. <u>See</u> <u>Orca Yachts, L.L.C. v. Mollicam, Inc.</u>, 287 F.3d 316, 318 (4th Cir. 2002). However, the merits will be addressed again herein.

3

As previously stated, defendants filed a motion for summary judgment and submitted an affidavit and exhibits in support thereof. Defendants submitted a copy of Sgt. August's affidavit that was provided in support of his motion for summary judgment in Civil Action Number 4:07-cv-00542, Entry Number 29-3, in which August attests that he is employed by the City of Darlington Police Department as a sergeant. On January 2, 2007, in his capacity as a police officer, August was presented with an arrest warrant which had been signed by Magistrate Daniel Causey, III, in his judicial capacity. August attests that there were two warrants for the arrest of Daniel McNeil, Jr., one for burglary first degree and another one for assault and battery of a high and aggravated nature. (August affidavit, p.1). August attests that the warrants were completely normal and valid, and he served the warrants on plaintiff in his capacity as a police officer and arrested plaintiff. August attests that he was taken to the detention center in Darlington based on the directions of the arrest warrant, as signed by Magistrate Causey. Id. August avers that the plaintiff's arrest was based on a warrant validly issued by a neutral magistrate, was valid on its face, and based on his duty as an officer of the court, the arrest was made. Id. August asserts that he has not violated any of plaintiff's constitutional rights. (August affidavit, p. 2). Therefore, defendants argue plaintiff was arrested based on the facially valid warrants and there was probable cause to arrest the plaintiff.

Defendants also submitted copies of the incident report of December 30, 2006, which details the events leading to plaintiff's arrest, a copy of the victims voluntary statements made on January 2, 2007, a copy of a restraining order that had been previously issued prohibiting plaintiff from contacting or harassing the female victim, and copies of two arrest warrants for the plaintiff signed by Magistrate Judge Causey for burglary first and assault and battery of a high and aggravated nature.

Plaintiff has alleged that defendant Investigator Watson failed to conduct a proper investigation in to the victims' statements, failed to investigate "witnesses, or to get an independent crime Lab technicians, or forensic (DNA) Analysis to do a complete investigation to prove his so call witness was Liars and con-

4

artists. . ." (Complaint p. 3). Plaintiff argues that defendants kept him from his right to a fair and independent investigation by the Darlington City Police Department. Further, plaintiff alleges there was a conspiracy with the victims and defendants.

Defendants submitted the affidavit of Investigator Watson who attests that he is employed with the Darlington City Police Department and his only involvement in the case against the plaintiff involved addressing the matter when the victim came in to the Department to sign a warrant for the arrest of the plaintiff. (Watson affidavit, doc.#30-9).

The Fourth Amendment right to be arrested only on probable cause is clearly established. Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996); Brooks v. City of Winston-Salem, 85 F.3d 178, 182 (4th Cir. 1996) (allegations that an arrest made pursuant to a warrant was not supported by probable cause states Fourth Amendment claim analogous to malicious prosecution). Probable cause requires facts and circumstances sufficient to warrant a prudent person to believe that the suspect has committed or is committing a crime. Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). Allegations that an arrest violates state law does not state a claim unless there was no probable cause for arrest. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1139 (4th Cir. 1982).

A public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. Harrison v. Sumter County Sheriff's Dept., 2008 WL 553181 (D.S.C. February 25, 2008), citing Porterfield v. Lott, supra and Brooks v. City of Winston-Salem, 85 F.3d 178, 181-82 (4th Cir. 1996). To state a claim for false arrest, plaintiff must claim an arrest was made without an arrest warrant. See Porterfield v. Lott, supra, ("A claim for false arrest may be considered only when no arrest warrant has been obtained.").

As set out in the discussion above, defendant August arrested plaintiff pursuant to two arrest warrants for plaintiff signed by a neutral magistrate judge. Magistrate Judge Causey issued an arrest warrant for

burglary first degree and assault and battery of a high and aggravated nature for plaintiff. Defendant August arrested the plaintiff in good faith relying on these arrest warrants. Plaintiff has not alleged or shown that he was arrested without a warrant.[2] Inv. Watson's involvement was limited to the time period when the victim came to sign a warrant. As plaintiff was arrested with facially valid warrants, plaintiff's allegations are without merit. Porterfield v. Lott, supra. Accordingly, defendants are entitled to summary judgment against plaintiff's claims under the Fourth Amendment.[3]

As to any claim of improper investigation by Inv. Watson, the claim fails. An investigating official is not required by the Constitution to perform an error-free investigation. Baker v. McCollan, 443 U.S. 137, 146 (1979). In Baker, the United States Supreme Court stated as follows:

> We do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as a lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error free investigation.

Id.

---

[2] It is noted in plaintiff's response in opposition to the defendant's motion for summary judgment that he states Sgt. James Davis was the investigating officer the night of the incident and Officer Davis made his observation and talked to James Lee Johnson. Plaintiff does not assert any contact with defendants until he was arrested at the Darlington Police Department on January 2, 2007, when he went there to check on his bicycle that the officers had taken from him while he was transported to the hospital the night of the incident.

Additionally, the United States Supreme Court has held that in order to recover damages for imprisonment in violation of the constitution, the imprisonment must first be successfully challenged. Heck v. Humphrey, 512 U.S. 477 (1990). Thus, any claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

[3] As to any allegation plaintiff is asserting that defendants violated his constitutional rights by not allowing him to file criminal charges on Mr. Johnson, one of the alleged victims, the claim fails. No citizen has an enforceable right to institute a criminal prosecution. Linda R.S. v. Richard V., 410 U.S. 614, 619 (1973)("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

Plaintiff has failed to set forth a valid cause of action for negligent investigation other than his own conclusory allegations. It is recommended that any claim for negligent investigation be dismissed.[4]

## V. CONSPIRACY

As to any allegation by plaintiff asserting a conspiracy on the part of the defendants, defendants argue that plaintiff has failed to establish such claims. Defendants argue that plaintiff has only unfounded suspicions as a basis for claims of conspiracy and make no allegation or showing in any manner of any communications between Sgt. August and Inv. Watson or other entities that might give rise to an inference of an agreement to commit any acts, wrongful or otherwise.

"To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." Marshall v. Odom, 156 F.Supp. 2d 525, 532 (D. MD. 2001), citing Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir.1996).  To meet the "weighty burden to establish a civil rights conspiracy[,]" .... "[the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421.  Thus, the "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id. "Acquiescence can amount to a conspiracy agreement when ...one ...officer watches an open breach of the law and does nothing to seek its prevention." Hafner v. Brown, 983 F.2d 570, 578 (4th

_____

[4] Additionally, the United Sates Supreme Court has held that in order to recover damages for imprisonment in violation of the constitution, the imprisonment must first be successfully challenged. Heck v. Humphrey, 512 U.S. 477 (1990). Thus, any claims for damages bearing that relationship to a conviction or sentence that has not been so invalidatd is not cognizable under §1983.

Cir.1992). Nonetheless, isolated acts by defendants that fail to evidence a shared understanding will not suffice to survive a motion for summary judgment.  See Hinkle, 81 F.3d at 421-23.  Plaintiff has failed to provide specific evidence of a conspiracy.


## VI.  QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.  That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at

8

> its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983."

9

937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendant (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## VII. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against them for money damages in their official capacity is barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against him should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the City of Darlington, they are

not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.   The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under  § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity.  Will, supra at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state.  State officials may only be sued in their individual capacities.

There is no dispute that the defendants August and Watson were employees of the City of Darlington Police Department and, thus, state officials acting in their official capacity. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages for claims against them in their official capacities.

## VIII.  STATE LAW CLAIMS

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law  theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## IX. CONCLUSION

For the above reasons, it is recommended that defendants' motion for summary judgment (document #29) be GRANTED.

It is FURTHER RECOMMENDED that any outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 21, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**